BRADY, Justice:
This is an appeal from the Chancery Court of Hinds County, Mississippi, where *405 in the appellants sought to obtain a distribution of funds and an adjustment in accordance with certain partnerships’ interest and an assignment of partnership interest by the appellee dated November 5, 1965. The chancellor dismissed the suit with prejudice. From that decision this appeal is taken.
The parties to this lawsuit formed a three-way equal partnership on September 30, 1955, effective June 1, 1955, to be known as the A. & M. Agency, and/or Mississippi Division, for the purpose of selling insurance and particularly life insurance from The Franklin Life Insurance Company. The issues in this case are determined by a specific assignment of partnership interest from appellee Pickett to appellant Liberto dated November 5, 1965, and principally by paragraph number six thereof, which is as follows:
Seller previously held and owned a Regional Manager’s Contract dated 2 day of January, 1951, and upon the creation of the partnership, herein referred to, intended to convey and did convey and assign all bonuses, commission, renewals and incomes derived therefrom, and all agents and sub-agents thereof to the said partnership, and the parties to this agreement do expressly agree to request an audit of such assigned rights and incomes from The Franklin Life Insurance Company in order that all such incomes can be properly distributed in accordance with the partnership interests from and after said date of June 1, 1955. All adjustments to be made, if any, will be made promptly by the parties. (Emphasis added.)
The above paragraph six was placed in the assignment from appellee Pickett on November 5, 1965, because shortly prior to that time it had been realized by Liberto that the “bonuses, commission, renewals and incomes,” from appellee Pickett’s Regional Manager Contract of January 2, 1951, which had been assigned by Pickett to the three-way partnership in 1955, had not been paid over to the partnership, but by oversight had continued to be paid to appellee Pickett throughout the duration of the partnership.
It should be remembered that W. W. Chamberlin, Jr. had withdrawn from the partnership as of December 1, 1960. Cham-berlin parted with and assigned only “all his rights in said partnership accruing on business ‘sold’ after December 1, 1960.” Thus it is that Chamberlin, or rather his successor in interest, his widow, appellant Mrs. Jimmie Chamberlin, remained entitled to his one-third interest in the Pickett renewals (from his Regional Manager Contract of January 2, 1951) down to the end thereof in December 1965.
The partnership continued, after Cham-berlin’s withdrawal, as to future business between Pickett and Liberto as equal partners as reflected by an agreement executed by all three parties on September 20, 1961.
Finally, Pickett and Liberto decided to terminate the partnership. Liberto was to buy and Pickett was to sell all his partnership interests. The buyer, Liberto, was to pay the seller, Pickett, $30,000 for all his interests. $10,000 was paid in cash, which was acknowledged, and $10,000 was to be paid on October 1 one year later and the final $10,000 was to be paid two years later on October 1. There is no dispute as to the terms and performances thereof as set forth in paragraphs one through five.
An audit was requested from The Franklin Life Insurance Company of “such assigned rights and incomes” which had been assigned by Pickett to the partnership. An audit was furnished by The Franklin Life Insurance Company and was placed in evidence which showed that Pickett had received certain payments from The Franklin Life Insurance Company which included the part he had assigned to the 1955 partnership from his 1951 Regional Manager Contract. The audit showed that the yearly incomes from renewals, which had been assigned, erroneously went to Pickett after the date of the partnership and until the end of the year 1965. The appellant seeks *406 a three-way division of the monies received by appellee Pickett in the amount of $10,-711.28.
The chancellor decided the case on the theory that appellants Liberto and Mrs. Jimmie Chamberlin, wife of the deceased partner to this partnership, had failed to do equity while seeking equity by their failure to furnish audits of their own interests in the partnership. The chancellor further held that the audits supplied by The Franklin Life Insurance Company were vague and contained many errors. The chancellor concluded that, since the word “incomes” was plural, the incomes of Mr. Chamberlin and Mr. Liberto would have to be audited and presented to the court before the “incomes” could be properly distributed in accordance with the partnership interest. For these reasons the chancellor found for the appellee and dismissed the bill with cost to the appellants. From that judgment this appeal is taken.
This entire case is disposable by an interpretation of paragraph six of the assignment. There appears to be no doubt that Mr. Pickett did receive the extra money which he had assigned in 1955 to the three-way partnership. It is possible that he was not even aware of his receipt of this extra money until the audit was presented into evidence which clearly showed that he had received all of the monies he had previously assigned to the partnership. It is requisite that this Court interpret paragraph six of the assignment executed by Pickett and Liberto on November 5, 1965.
Specifically, paragraph six provides that the seller (Mr. Pickett) previously owned a Regional Manager Contract dated January 2, 1951, and upon the creation of the partnership (composed of George B. Pickett, W. W. Chamberlin, Jr. and V. A. Liberto) the seller intended to convey and did convey and assign all bonuses, commission, renewals and incomes derived therefrom, and all agents and subagents thereof to the said partnership and the parties to this agreement (George B. Pickett and V.
A. Liberto) do expressly agree to request an audit of such assigned rights and incomes from The Franklin Life Insurance Company in order that all such incomes can be properly distributed in accordance with the partnership interests from and after June 1, 1955. All adjustments to be made, if any, will be made promptly by the parties.
We hold, just as the learned chancellor held, when the trial was underway, “I think the contract speaks for itself. These are intelligent business men, who entered into these written contracts * * *. They knew what they were doing * * When Mr. Pickett was on the stand counsel representing the appellants objected to his testifying in conflict with the terms of paragraph six of the assignment in the following language:
May it please the Court, let us interpose an objection here for the record. We object and move to exclude insofar as that conflicts with the written contract.
BY THE COURT:
It does, the written contract doesn’t provide for that.
>{í íjí 4c
BY THE COURT:
* * * I will say this, that contract is unambiguous and is controlling, and parol evidence to explain the terms of a written contract is only admissible when it is ambiguous.
Counsel representing the appellee made the following request:
Well, may I make this request of Your Honor? Would you reserve your ruling on it at this time?
BY THE COURT:
Yes.
Subsequently the chancellor apparently abandoned his correct ruling with reference to the inadmissibility of parol testimony to vary or contradict the written assignment *407 because he points out that the record is silent as to what became of Mr. Chamber-lin’s override commissions, and the override commissions of Mr. Liberto. This is tantamount to holding that the contract is ambiguous and therefore the explanation of Mr. Pickett as to the intent of the parties was admissible and controlling, which required an accounting as to Mr. Chamber-lin’s and Mr. Liberto’s override commissions.
We have read paragraph six many times with meticulous care. It is obvious to us that by the language utilized in paragraph six the seller intended to convey and did convey all of his bonuses, commission, renewals and income derived from his Regional Manager Contract to the partnership and the seller agreed that all of these bonuses and incomes and all agents and sub-agents thereof to the partnership expressly agreed to request an audit of such assigned rights and incomes by The Franklin Life Insurance Company in order that all such incomes (assigned) could be properly distributed in accordance with the partnership interests from and after June 1, 1955. The parties to this assignment, being George B. Pickett and V. A. Liberto, agreed that all adjustments to be made, if any, will be promptly made, but the incomes, the renewals, the commission, and the bonuses referred to in paragraph six are only those assigned by the appellee. Apparently the learned chancellor felt that since the word “parties” was also in the plural, in some manner it was intended, in accordance with the parol testimony of Mr. Pickett, that the incomes of all three parties should be audited. This is reading into paragraph six requirements which cannot logically and reasonably be found therein. This contract is not ambiguous and clearly states the intention of “two intelligent business men” who were dealing at arms length. The argument made by the appellee insofar as the contract being ambiguous is concerned is of no import. The ancient and noble doctrine that he who seeks equity must first do equity resorted to and urged by the learned chancellor and reaffirmed by counsel representing appellee has no application in the construction of paragraph six of this assignment and does not call for, under the conditions and obligations of the assignment, an audit of either Mr. Chamberlin or Mr. Liberto.
Insofar as appellee’s third error assigned, which is that the audit by The Franklin Life Insurance Company of Pickett’s account amounts only to surmise and speculation, we now address ourselves. While it is true that of the one hundred and thirty-odd payments made there was a variance or difference in the amounts shown in forty-six instances which total approximately 33(4'% of the payments, we cannot agree that the account amounts only to surmise and speculation. The canceled checks introduced in evidence of the commissions, bonuses, renewals and incomes paid to and acquired by Mr. Pickett show conclusively that he received these sums of money which apparently total the sum of $10,711.28. The discrepancies which occurred as to these amounts were occasioned by, according to Mr. Driver of The Franklin Life Insurance Company’s Auditing Department, a change in auditing procedures. It is to be remembered that the exhibits presented were pictures taken from microfilms which ,had been made by The Franklin Life Insurance Company and which had been .stored for many years, and at least from 1956. This data was obtained from an 1-9 file which was the appellee’s code and file number with The Franklin Life Insurance Company. The determination of the amounts which can actually be shown to have been paid to Mr. Pickett in violation of paragraph six of his agreement can be determined with reasonable certainty and this the chancellor is requested to do.
In conclusion, we note that the concluding paragraph of the assignment, which is the basis for this lawsuit, is as follows:
NOW THEREFORE, the said George B. Pickett does hereby assign, transfer, *408 convey and warrant unto the said V. A. Liberto, all of his said interest, free from all encumbrances, in the partnership created by virtue of said partnership agreement made and entered into on September 30, 1955, effective June 1, 1955, by and between the said George B. Pickett, W. W. Chamberlin, Jr., and V. A. Liberto, trading as the A & M Agency and/or Mississippi Division, and including, but not limited thereto, the Regional Manager’s Contract issued to the partnership by The Franklin Life Insurance Company dated November 1, 1955, as amended and supplemented in writing thereto, and including any and all bonuses, commissions, renewals, accruals and incomes of any kind, character or description to which said partnership shall heretofore (except as mentioned in paragraph No. 6 above), now or shall hereafter be entitled to receive, and including any and all assets of said partnership, real, personal or mixed, tangible or intangible, as the case may be.
This transfer and assignment of all of the appellee’s rights except for the reservation in paragraph six terminates any interest which Mr. Pickett had subsequent to November 5, 1965. The audit therefore should reflect any and all payments made to Mr. Pickett from and after June 1, 1955, to November 5, 1965, under the conditions outlined in paragraph six of the agreement. These sums should be equally divided between the appellants and the appellee.
For the foregoing reasons this cause is reversed and remanded and the chancellor directed to determine the amounts erroneously paid to Mr. Pickett and to equally divide this sum between the appellants and the appellee herein in accordance with this opinion.
Reversed and remanded.
GILLESPIE, P. J., and RODGERS, JONES and INZER, JJ., concur.